IN The United District court

Vernado Malone
        Plaintiff
        V.

Case No: 07-1232
        Clerk to supply

FILED

SEP 1 2 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

1  J.C. Zuercher, Warden FCI Pekin
2  Michael K. Nalley, Regional Director
3  Richard W Schott, Regional counsel
4  MR. Diltelman, A.H.S.A
5  DR. S. Moats, clinical Director
6  DR A. Molina, cronic care doctor
7  Mrs. J. Richardson, case Manager
8  Mrs. S.L. Wheeler, unit Manager
9  Mr. Larry Geber, unit counselor
10 Mrs. Terry Garrett, secretary
11 John Doe, correctional officer (unknown name)
12 Mrs. Fisher, correctional officer
13 Harley G. Lappin, Director, United States Dept. of Justice, Federal bureau of prisons
14 Alberto R Gonzales, Attorney General United States Department of Justice

        In their individual and official capacities
                                        defendant(s)

## CIVIL RIGHTS COMPLAINT
## WITH A JURY DEMAND

This is a §1983 action Filed by Vernado Malone, a Federal Prisoner alleging violation of his constitutional rights and seeking money damages; Nominal damages, Punitive damages, compensatory Damages and Injunctive Relief

### Jurisdiction

This is a civil rights action under 42 U.S.C §1983. This court has Jurisdiction under 28 U.S.C §1348. Plaintiff also invokes the Pendent Jurisdiction of this court. The Plaintiff claims arose in the Jurisdiction of this court in Pekin Illinois

## Parties

1    Plaintiff Vernado Malone is presently incarcerated at the Federal Correctional Institution in Pekin Illinois (F.C.I Pekin).

2    Defendant J.C. Zuercher is the the warden of F.C.I Pekin, and is responsible for the operation and management of F.C.I Pekin. He is ultimately responsible for the training and supervision of the correctional personal employed at FCI Pekin. He is sued in his individual and official capacities.

3    Defendant Mike Nalley is the regional director, and is responsible of the oversee of the operations of the facilities with in his respective geographic regions such as F.C.I Pekin.

4    Defendant Richard W. Schott is the regional counsel, and is responsible of overseeing legal matters with-in the regional of FCI Pekin for staff. He is sued in his individual and official capacities

5.    Defendant Mr. Diltelman is the Assisit Health service administration and is responsible of overseeing the medical department staff and treatment of inmates by medical staff & Doctor(s). He is sued in his individual and official capacities.

6    Defendant DR. S. Moats is the clinical director at F C I Pekin and is responsible of inmates medical treatments and medical transfers. He is sued in his individual and official capacities.

7    Defendant DR. A. Molina. is an doctor at FCI Pekin and is responsible of medical treatments of inmates. He is sued in his individual and official capacities

8    Defendant Mrs J. Richardson is an case manager at F C I Pekin and is responsible of inmates on her case load and responsible of submitting inmates for transfer, etc. She is sued in her individual and official capacities.

2

Federal bureau of prisons, prison operations of the bureau

9    Defendant Mrs S.L. Wheeler is presently an unit manager at FCI Pekin and is responsible of her unit team (case manager -N- counselor) and she oversee the work of her unit team and make final decision on matters, etc. She is sued in her individual and official capacities.

10    Defendant Mr. Larry Geber is presently an correctional counselor at FCI Pekin and is/was responsible of his unit, (Illinois-2) inmates daily living, etc. He is sued in his individual and official capacities.

11    Defendant Mrs. Terry Garrett is presently an Chaplian secretary at FCI Pekin and is responsible of assisting her department staff. She is sued in her indvidual and official capacities.

12    Defendant John Doe (unknown name) is presently an correctional officer or administration staff at FCI Pekin who share a common role as correctional worker, which requires a mutual responsibility for maintaining "safe" and secure institutions and for modeling society's mainstream values and norms.

13    Defendant Mrs. Fisher is presently an correctional officer at FCI Pekin which she has a mutual responsibility for maintaining safe and secure institutions and etc. She is sued in her individual and official capacities.

14    Defendant Harley Lappin is presently the Director of the united states Dept of Justice Federal bureau of prisons and is responsible of each federal bureau of prisons prisons, responsible of the bureau rules and policy that inmate must follow, etc. He is sued in his individual and official capacities.

15.    Defendant Alberto Gonzales is presently the Attorney General united states Department of Justice who work with the Director of the united states Dept of Justice Federal bureau of prison. He is sued in his individual and official capacities

## Facts

1. Plaintiff Malone is House at the Federal correctional Institution in Pekin Illinois (12-13-06 to Present)

2. Plaintiff Malone suffer from cronic asthma and other Medical promble that he is under an doctor care For.

3. All Federal Prisons are smoke-Free Institutions

4. Federal law band smoking on Federal work places ground, etc.

5. The State of Illinois band smoking in Public/work places.

6. The city of Pekin has a band on smoking at Public places.

7. Cirgarettes is contraband at FCI Pekin

8. Defendant Richardson has smoke over approximately 40 cirgarettes while on duty at FCI Pekin outside the entrance and exit door of Plaintiff Malone housing unit (Illinois 2) and less then 25 Feet of the said doors. that Malone had to travel while going to different area of the Prison compound or returning from different area of the compound Which the Plaintiff(Malone) had to inhale her cirgarette smoke that lead Malone to use his Asthma inhaller and other medication This defendant Knew of Plaintiff Malone Asthma but Fail to keep Malone From 2nd smoke From December 2006 to Present date. She is sued

9. defendant Geber is a counselor that Plaintiff Malone was assign to upon Malone arrival at FCI Pekin. The said defendant was to over see Plaintiff Malone daily living needs, etc. This defendant while on duty and disregarding my health smoked over 100 cirgarette in Plaintiff Malone Path of travel or with-in 25 Feet of plaintiff housing unit entrance and exit door or Food service exix doors in disregarding Plaintiff Malone asthma and other medical condition but to satisFY his own smoking desire. This defendant Knew Plaintiff malone had effects From 2nd hand cirgarette smoke but he Fail to keep me From his cirgarette smoke. He is sued.

10    Defendant Garrett while on duty as an secretary
For the chapel department and in disregard to the Federal law
ban on smoking on Federal Property Smoked on each workday
either in Plaintiff Malone Path or others Path to cause Plaintiff
Malone to un-willing to inhale her 2nd hand smoke From her cirgarette(s)
While standing out side of the chapel doors and less then 25 Feet
From the chapel entrance & exit doors. This defendant also smoked her
cirgarettes out side of Food Service doors that the Plaintiff had to exit
upon eating lunch or dinner which lead Malone to inhale her 2nd hand
Smoke. On 8-8-07   this defendant in disregard to inmates health
Stood outside of the chapel blowing cirgarette smoke which the Plaintiff
un-willing had to inhale in which the Plaintiff Malone had to use his
asthma inhaler which lead him to sick call the next mornning. This
defendant disregard state and Federal law, and put this Plaintiff in health
risk and Future health danger. she is sued.

11    Defendant John Doe (unknown name) while on duty at FCI Pekin
as an correctional officer or administration staff and in disregard to the
State and Federal law, smoked cirgarettes either with-in 25 Feet
of entrance & exit doors of either one of the following locations;
All housing units, visiting room compound door, Lt. complex.
Food Service exit door, chapel doors, R&D door and Education
department doors all the locations are on the compound of
FCI Pekin which the Plaintiff inhale along his Path that
lead to the Plaintiff having Pain. This defendant is sued.

12    Defendant Fisher while on duty as a correctional officer
and in disregard to Federal law and the Plaintiff Medical cond
has knownly smoked over 30 cirgarettes in Malone's Path of travel
or his standing Outside his prison Housing unit. Defendant Fisher knew of
the Plaintiff asthma condition and effects to 2nd hand/cirgarettes smo;

5

but she fail to keep her cirgarette smoke away From the path of the Plaintiff to satisfy her own smoking desire. This defendant is sued.

13.   Defendant Lappin is presently the director of the bureau of prison Which the Plaintiff has requested to him to have all staff member stop smoking at FCI Pekin Smoke Free institution (See attach exhibit Dune1) Which was/is Putting the Plaintiff health at risk and future health at risk and danger The defendant fail to comply. He is sued.

14.   Defendant Dittelman is presently the Assisit Health service administration Which has treated the Plaintiff for effects from staff 2nd Hand smoke. Mayone have been treated at sick call do to cirgarette smoke and break out From steroids and corticosteroids do to an allergic reaction From beclomethasone, Triamcinolone Acetonide 20 Gm and Flunisolide Nasal (Nasarel) 25Gm. Which was given to the Plaintiff to use upon contact of staff 2nd hand smoking. He is sued

15.   Defendant Moats, The clinical Director refuse to remove me From the institution tru submitting an medical Transfer request. defendant Moats place me on an corticosteroid after I had an allergic reaction to the first steroid inhaler in disregard to Plaintiff reaction to the first steroid that was given to Plaintiff.

16.   Dr. Molina is the cronic care doctor who see Plaintiff for asthma and place the Plaintiff on steroids and asthma inhaller and refuse to submit the Plaintiff for an transfer. He is sued

17.   Defendant Michael Nalley oversees institutions with-in the North central regional, this defendant has a duty to make sure his assign institution meets the department of Justice prison standard and Federal laws. This defendant was made aware of staff smoking while on duty, and the Plaintiff asked him to intervene, but he fail to stop staff from smoking Putting Plaintiff health at risk of future harm. he is sued.

18    Defendant Wheeler is a unit manager and was over the Plaintiff housing unit from Dec, 2006 to Aug, 9, 2007. This Plaintiff allowed her staff (unit officer's, casemanager's and counselor's) to smoke outside the exit and entrance door of the Plaintiff housing unit. After the Plaintiff advise this defendant She said "wow" and took no steps to assure that her unit staff to stop their smoking nor did this Plaintiff take steps to remove the Plaintiff from the un-reasonable risk to future cancer, breathing promble and present health risk and pain. She is sued.

19    Defendant J.C. Zuercher is the warden of the institution This defendant oversees the entire institution, he place rules and ensure that staff and inmates follow policy that is in place and that the prison is an safe by all means. This defendant have allowed his staff to bring into the prison items that are contraband that pose a risk to the Plaintiff health that could lead to cancer and other breathing prombles And the said contraband (cirgarettes) Make the Plaintiff breath harder or loose his breath causing pain and the used of medication along with loss of blood. The Plaintiff has sent this defendant a numerous amount of request seeking him to stop his staff from smoking do to My future and present health, and health risk. But defendant deliberate allowed Plaintiff with chronic asthma be subject to Environmental tobacco smoke that pose an unreasonable risk of damage to Plaintiff present chronic asthma and future health. This defendant acted with deliberate indifference. He is sued.

# Claims

## First cause of Action

1  Each defendants name or listed as Parties on Page two
Violated the Plaintiff eighth Amendment Constitution
of the united states

2    Plaintiff's eighth Amendment right to be
Free of cruel and unusual Punishment

    a) He was expose to environmental tobacco smoke
      while House at Pekin Federal correctional Institution
      an smoke/Tobacco Free Institution.

    B) Prison officials deliberately Failed to enforce smoking rules,
      which contributed to ambient tobacco smoke at FCI Pekin

    C) Prison officials showed a deliberate indifference in malone health

## Second cause of Action

1  The actions of the defendants violated State and Federal
law and regulations

2    Plaintiff alleges that defendants in Paragraphs 2 through 15
of Page 2 through 3 violated State and Federal law and the
bureau of Prison regulations on smoking

# Relief

Wherefore, Plaintiff requests this Honorable court grant the Following relief:

A.  Issue a declaratory judgment that defendants violated the united states Constitution, Regulations, and State and Federal law when they:

1) Knowingly expose tobacco smoke to the Plaintiff in Non Smoking area or in the Path of the Plaintiff in disregard to Plaintiff health, Future health risk, B.o.P regulations, Federal Smoking law, while in custody at an Federal correctional Smoke-Free Institution at F.C.I Pekin

B.  Issue an injunction ordering that defendants or their agents

1) refrain From smoking Tobacco near the Plaintiff or any Path that the Plaintiff May travel at F.C.I Pekin, to Prevent health risks, Future health risk(s) injury that could lead to death.

C.  Grant compensatory damages in the Following amount.

$75,000. against defendant J.C. Zuercher, warden

$75,000. against defendant Mrs. J. Richardson, case Manager

$75,000. against defendant Mr. Larry Geber, unit counselor

$75,000. against defendant Mrs. Fisher, correctional officer

$75,000. against defendant Mrs. Terry Garrett, chapel secretary

$75,000 against defendant "John Doe" (unknown name staff)

$50,000 against defendants Michael Nally, Richard Schott, MR Ditteman, Dr. S. Moats, Dr A Molina, Harley Lappin and Alberto Gonzales

9

D   Grant Punitive damages of $50,000. against each defendants.

E   Grant Nominal Damages against each defendants

F   Grant such other relief as it may appear Plaintiff is entitled.

Dated: 8/29/07

Respectfully submitted,
Vernado malone sr
Vernado Malone sr 05898-027
FCI Pekin
PO Box 5000
Pekin Illinois 61555-5000

10

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO: (Name and Title of Staff Member) Unit | DATE: |
|---|---|
| Mrs Wheeler IL-2 case manager | 7  13  07 |
| FROM: Malone, V | REGISTER NO.: 05898-027 |
| WORK ASSIGNMENT: Rec | UNIT: IL 2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

On 7-13-07 I mate with the Head of Medical and the clinical Director
on the issue of the smoking that I inhale from staff on the gound of the Prison
which has made my astma worse, That steroids   was given to me but was
stopped on 7/13/07 due to an side effect. Doctor Moats & AHSA Mr. Diltelman
Has brought this to Lt. Torres attention I'm requesting an transfer to MCC-
Chicago where its a smoke-free institution by inmates and staff. ~~Please~~ until
my release time. I have spoke with my case manager as told by mr. Diltelman
but was told to tell you by cop-out.

                                    Please advise & Place
                                    cop in my File

**(Do not write below this line)**

DISPOSITION:

*Reputative*

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

*Place in medical File*

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) Doctor Moats/Et.al (medical) | DATE: 7/9/07 |
|---|---|
| FROM: V. Malone | REGISTER NO.: 05898 027 |
| WORK ASSIGNMENT: RRC | UNIT: IL 2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

SIR, Those New Meds have incress my tremors and the nose spay affected my smelling to my nose runs and I have to blow all night long. Smoke is like an allergy It make me sneeze, my nose runs and I itch. We spoke a month ago. I have astma and since I've been here I've been try 3 of more inhalers. The most in any other institution I been at, one inhaler last a year or two, 2nd hand smoke is like smoking. My unit team can't transfer without an medical request I'm seeking to be sent to mcc chgo to Finish my sentence, its a free smoke free institution and has doctors For my back and mental thats is an issue too. Also please see me since I been on the New Meds my penis broke out

Please Advise

(Do not write below this line)

DISPOSITION:

You have been scheduled a follow-up appointment with the Clinical director.

| Signature Staff Member S. MOATS/M.D. CLINICAL DIRECTOR | Date 7-11-07 |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**DEAR SENATOR DURBIN,**

My name is Vernado Malone,and I'm seeking your help
on an issue that is affacting my health here at the federal
prison in Pekin Illinois.The Institution is a **SMOKE FREE
INSTITUTION** but staff smoke daily which I inhale.

I have astma and was place on an steroids inhaler which I
was tooken off of due to an side effect.I has ask to transfer
me to another institution that is smoke feee by staff and inmates.

The medical staff(MR.Deltilman)has advise me that he has address
this with Lt.Torres and he feel thats no staff should be smoking
since this is a smoke free institution.  I feel this is a danger
to my health do to my astma.

I have been give some pills that has a **"RISK OF SERIOUS AND
SOMETIMES FATAL HEART PROMBLEMS..."(**see attach). I have ask
that I be move to Mcc-Chgo but that request has not been mate.

I have type a release of information form so you can obtain
any information that you may need. If you need to speak to
me you can fax a request for me to call you to my unit manager
Ms.Wheeller @ _3c9  477  4656_____with the day and time
for me to call you.

Dated: 7 / 17107

OFFICIAL SEAL
Sandra L. Tudela  7|7|07
Notary Public, State of Illinois
My Commission Expires 02/10/2010

Thanks

_Vernado malone_
VERNADO MALONE   05898-027
P.O. BX 5000
Pekin,Ill   61555-5000

REFF: MEDICAL FILE 05898027

      A.H.S.A MR.DENTEMEN,

          UPON REVIEWING MY MEDICAL FILE ON 8-3-07 @ 12:56 P.M
I NOTICE THAT YOU MADE SOME NOTES IN MY FILE ON 7-24-07in
which YOU CONTACTED MY COUNSELOR MR.GEBUR.I DON'T KNOW IF YOU
DIDN''T UNDERSTAND ME ,I INFORM YOU THAT I HAD A LEGAL CALL AND THE ROOM HAD S
SMOKE IN IT(ONCE) BUT THAT STAFF SMOKE DAILLY OUTSIDE OF THE HOUSING
UNIT THAT I LIVE IN SUCH AS COUNSELOR GEBUR,CASEMANAGER MRS RICHARDSON,
ILLINOIS UNIT MRS.FISHER AND COUNSELOR MRS.BOWMAN IN WHICH I GET
EXPOSED TO SECOND HAND SMOKE.

   THE WARDEN HAS SENT ME A REPLY SAYING OUTSIDE OF THE HOUSING UNIT
ARE NOT SMOKING AREAS BUT NEVERLESS "EVERYDAY" MY OWN UNIT TEAM
SMOKE OUT SIDE THE HOUSING UNIT(IL_UNIT).ON 7-31-07 I SPOKE WITH AN
ATF SPECIAL AGENT HERE AT PEKIN ON AN VISIT THAT HE TOLD ME THAT BE
SURE THAT MEDICAL STAFF IS NOTING MY MEDICAL FILE ON WHAT STEPS THERE
ARE DOING TO ADVISE STAFF OF MY MEDICAL PROBLEM OF ASTHMA ANDHOW
@2nd HAND SMOKE AFFECT IT AND THE DANAGER IT COULD LEAD TO IN THE FUTURE.

   ALSO ON 7-28-08 MY UNIT OFFICER SENT ME TO MEDICAL TO BE SEEN
DUE TO MY RIGHT ARM WAS RED AND BROKEN OUT,WHICH HAPPEN AFTTER
TAKING THE INHALER THAT HAD STEROIDS IN IT. MY MEDICAL FILE DON'T
SHOW THAT ANY ONE SAW ME IN WHICH MEDICAL STAFF SHOULD HAVE MADE
AN NOTE THAT I WAS SEEN AND HE STOPPED THE INHALLER AND TOLD ME TO
REPORT TO SICK CALL ON 7-30-07. I HAVE HAD AN ALLERGY EFFECT TO
STEROIDS 2 TIMES NOW ,PLEASE LIST STEROIDS AS AN ALLERGY ON MY FILE
AND NOT THAT I WAS SEEN ON 7-28-07.

  LAST,HAVE AN MRI BEEN SET UP FOR MY BACK (spine) ? PLEASE PLACE A COPY
OF THIS IN MY MEDICAL FILE AND ADVISE ME

8-3-07

                   V. Malone
                  05898-027

BP-S148.055 **INMATE REQUEST TO STAFF** CDFRM
SEP 98

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| TO:(Name and Title of Staff Member) AHSA Dilteiman | DATE: 7 21 07 |
|---|---|
| FROM: V. Malone | REGISTER NO.: 05898 027 |
| WORK ASSIGNMENT: Rec | UNIT: IL 2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary. Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

Attach is a copy of A letter address to the Regional
counsel
    Please place a copy of this in my medical File
And still be advise I'm still being expose to environmental
tobacco smoke (Ets) by staff.

(Do not write below this line)

DISPOSITION:

A copy has been placed in your file. You are encouraged
to speak with Unit Dean, (Captain) & AW(P) in regards to any
individuals whom are smoking.

| Signature Staff Member _Mason HSA_ | Date 7/24/07 |
|---|---|

Record Copy - File Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

**FCI PEKIN PHARMACY**       (309) 346-8588
2600 S. SECOND ST. - PEKIN, IL  61554
   155060       S. MOATS                06/12/07
MALONE, VERNADO                   05898-027
FCI PEKIN - A05-107L
**SHAKE WELL & INHALE 1-2 PUFFS BY
MOUTH EVERY 4 TO 6 HOURS AS NEEDED**

ALBUTEROL INHALER HFA (6.7GM) 90MCG INH       #7
(5)Refills       06/12/2007     BXF      RxExp 12/08/07
CAUTION: Federal/State law prohibits transfer of this drug
to any person other than patient for whom prescribed.

**FCI PEKIN PHARMACY**       (309) 346-8588
2600 S. SECOND ST. - PEKIN, IL  61554
   155694       A. MOLINA                06/25/07
MALONE, VERNADO                   05898-027
FCI PEKIN - A05-107L
**INHALE 2 SPRAYS IN EACH NOSTRIL TWICE
DAILY**

FLUNISOLIDE NASAL (NASAREL) 0.025%, 25GM NASA
(3)Refills       06/25/2007     WHG      RxExp 12ᴸ
CAUTION: Federal/State law prohibits transfer of this dru
to any person other than patient for whom prescribed.

**FCI PEKIN PHARMACY**       (309) 346-8588
2600 S. SECOND ST. - PEKIN, IL  61554
   155695       A. MOLINA                06/25/07
MALONE, VERNADO                   05898-027
FCI PEKIN - A05-107L
**SHAKE WELL AND INHALE 2 PUFFS BY
MOUTH TWICE DAILY**

BECLOMETHASONE DIP (QVAR) 40 MCG/7.3GM       #7
(4)Refills       06/25/2007     WHG      RxExp 12/21/07
CAUTION: Federal/State law prohibits transfer of this drug
to any person other than patient for whom prescribed.



Vernado Malone Reg# 05898-027
Correctional Institution
C-5000
IL-1555-5000

Special Mail

Bureau of Alcohol
Tobacco Firearms
Law Enforcement
c/o Carl J Truscott - Director
650 Massachusetts Ave N W
Washington, DC
20226

A.T.F

To Whom it may concern,

    I'm writing to you to seek help
and to report an Tobacco law violation at the
Pekin Federal Correctional Institution in Pekin Illinois.

My name is Vernado Malone and I'm serving
an 46 month sentence. This is a smoke Free
institution but staff smokes daily on duty. I
was put on a Steroid inhaler For my asthma
do to 2nd hand smoke but do to an side effect that
I was tooken off and place on a inhaler that
don't help. I have ask to be transfer but that
request havn't been matte. I'm asking that your
office interview me by phone which more detail will
be given. The prison will deny that staff smokes
but I wouldn't be seeking help.

    You may Fax my unit team (unit manager) Mrs. wheeler.
a letter head requesting I contact your office
at a set time and date. The letter head must
have my name and I'd # (05898-027) on it.

Mrs wheeler Pesonal Fax # is 309 477 4656
and her voice # is 309 346-8588

    Please on any and all mail to me put "Special mail
open in front of inmate" So I will get your mail.

I'll be looking in hearing from you.

                   Truly
               Vernado malone 05898-027

7/23/07

# FEDERAL CORRECTIONAL INSTITUTION
## PEKIN, ILLINOIS

### INMATE ATTEMPT AT INFORMAL RESOLUTION
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In accordance to Bureau of Prison's Program Statement 1330.11 Administrative Remedy for Inmates, any inmates attempting to seek formal review of a complaint must first attempt to resolve the complaint by presenting it to a staff member. The staff member must attempt to resolve the matter prior to the issuance of a Request for Administrative Remedy (BP-9) to the inmate.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

1. Briefly explain the nature of your complaint. You must include all pertinent details and facts that support your case.

The 2nd hand smoking by staff that I've inhale has affect my Cronic health (astma). I was place on steroids but was token off on 7-13-07 due to an side effect, I mate with Pekin A.H.S.A Mr Diiteiman and the clinical Director Dr. moats which both agreed that this smoking by staff isn't fair and Mr Diiteiman spoke with Lt. Torres to confirm this was a smoke free institution. both Health service staff told Me to inform my unit team am they will assist if I wish. I told my case manger she said tell Mrs wheeler

2. What action do you wish to be taken to resolve this matter?

To be transfer to MCC-chgo or an non smoking free (by staff & inmates) Institution There's no other action can resolve this matter.

Vernado Maione-05898 027            IL 2            7-13-07
Inmate's Name & Reg. No.                Unit            Date
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

3. The staff member attempting to resolve this matter will indicate below the steps taken and will return this to the inmate.

_____

Staff Member's Name & Title            Date

Comments of Reviewing Official:
this is a smokefree institution

Reviewed by: _____            7·16·07
Signature & Title of reviewing official            Date

COP-OUT TO WARDEN

REFF: STAFF SMOKING

WARDEN ZUERCHER,

          Sir,on 8-8-07 you responsed to a cop out
address lto you in which a copy is attach.In your responce you stated
that areas near the front of the housing units are not designated smoking
areas,and the other areas around the compound that are designated smoking
have the "appropriate" signing and have been placed 25 feet from "any"entrance.

    SINCE YOU SENT YOUR RESPONSE BACK,I'VE READ P.S.1640.40,AND NOTICE THAT
THE PROGRAM STATEMENT HAVN'T BEEN UPDATED SINCE THE INSTITUTION BECAME
SMOKE FREE...
    EACH CIGARETTE RECEPTACLES THAT YOU SPOKE OF IN THE RESPONSE YOU SENT
ME ARE THE ONES THATS ARE OUT SIDE OF THE HOUSING UNITS WHERE STAFF IS
SMOKING AT IN WHICH IS NOT 25 feet from THE ENTRANCE AND EXIT OF THE
HOUSING UNIT.

    ON 8-8-07 WHILE WALKING TO REC. STAFF MEMEBER MRS.GARRETT WAS STANDING
NEXT TO THE CIGARETTE RECEPTACLES THAT OUT SIDE OF THE CHAPEL SMOKING
IN WHICH I ONCE AGAIN INHALE 2nd HAND SMOKE THAT LEAD ME TO USE MY INHALER
AND LEAD ME TO SICK CALL THAT NEXT DAY. THE RECEPTACLE THAT MRS.GARRETT
WAS SMOKING AT IS ONLY APPX 13 FEET FROM THE CHAPEL DOORS(ENTRANCE & EXIT)
AND THE RECEPTACLE IS MOUNTED ON THE COMPOUND THAT MYSELF AND OTHERS
MUST TREVAL EACH DAY.

EACH RECEPTACLE THAT ARE ON THE COMPOUND IS EITHER OUT SIDE OF EACH HOUSING
UNITS ENTRANCE AND EXIT DOORS OR THE CHAPEL DOORS WHICH EACH ONE IS
LESS THEN 25 Feets,NERVER LESS NO MATTER HOW SENSITIVE STAFF IS TOLD TO BE
THAT INMATES ARE NO LONGER TO SMOKE (WHICH I NEVER SMOKE DO TO HEALTH REASON)
    I SHOULD NOT HAVE TO INHALE STAFF SMOKING AT NO GIVING TIME.

I GOT TRANSFER FRO FCC YAZOO ON A MEDICAL TRANSFER TO PEKIN FOR MY ASTHMA
AND MY ASTHMA HAS WORSEN SINCE I HAVE BEEN HERE DO TO BEING EXPOSE TO
SMOKE BY YOUR STAFF.AT MY LAST #3 INSTITUTIONS(MCC CHGO,USP LEXVENWORTH,AND
FCC YAZOO CITY)THERE IS NO SMOKING AT ALL BY INMATES NOR STAFF.
    MY REQUEST IS TO BE HOUSE AT MCC CHGO UNTIL MY CCC PLACEMENT AND NOT
TO BE FORCE TO STAY HERE AND INHALE STAFF SMOKING.

                              PLEASE ADVISE
                              Verrado malone
8-15-07

---

COP-OUT TO WARDEN

REFF: STAFF SMOKING

WARDEN ZUERCHER,

          Sir,on 8-8-07 you responsed to a cop out
address lto you in which a copy is attach.In your responce you stated
that areas near the front of the housing units are not designated smoking
areas,and the other areas around the compound that are designated smoking
have the "appropriate" signing and have been placed 25 feet from "any"entrance.

    SINCE YOU SENT YOUR RESPONSE BACK,I'VE READ P.S.1640.40,AND NOTICE THAT
THE PROGRAM STATEMENT HAVN'T BEEN UPDATED SINCE THE INSTITUTION BECAME
SMOKE FREE...
    EACH CIGARETTE RECEPTACLES THAT YOU SPOKE OF IN THE RESPONSE YOU SENT
ME ARE THE ONES THATS ARE OUT SIDE OF THE HOUSING UNITS WHERE STAFF IS
SMOKING AT IN WHICH IS NOT 25 feet from THE ENTRANCE AND EXIT OF THE
HOUSING UNIT.

    ON 8-8-07 WHILE WALKING TO REC. STAFF MEMEBER MRS.GARRETT WAS STANDING
NEXT TO THE CIGARETTE RECEPTACLES THAT OUT SIDE OF THE CHAPEL SMOKING
IN WHICH I ONCE AGAIN INHALE 2nd HAND SMOKE THAT LEAD ME TO USE MY INHALER
AND LEAD ME TO SICK CALL THAT NEXT DAY. THE RECEPTACLE THAT MRS.GARRETT
WAS SMOKING AT IS ONLY APPX 13 FEET FROM THE CHAPEL DOORS(ENTRANCE & EXIT)
AND THE RECEPTACLE IS MOUNTED ON THE COMPOUND THAT MYSELF AND OTHERS
MUST TREVAL EACH DAY.

EACH RECEPTACLE THAT ARE ON THE COMPOUND IS EITHER OUT SIDE OF EACH HOUSING
UNITS ENTRANCE AND EXIT DOORS OR THE CHAPEL DOORS WHICH EACH ONE IS
LESS THEN 25 Feets,NERVER LESS NO MATTER HOW SENSITIVE STAFF IS TOLD TO BE
THAT INMATES ARE NO LONGER TO SMOKE (WHICH I NEVER SMOKE DO TO HEALTH REASON)
    I SHOULD NOT HAVE TO INHALE STAFF SMOKING AT NO GIVING TIME.

I GOT TRANSFER FRO FCC YAZOO ON A MEDICAL TRANSFER TO PEKIN FOR MY ASTHMA
AND MY ASTHMA HAS WORSEN SINCE I HAVE BEEN HERE DO TO BEING EXPOSE TO
SMOKE BY YOUR STAFF.AT MY LAST #3 INSTITUTIONS(MCC CHGO,USP LEXVENWORTH,AND
FCC YAZOO CITY)THERE IS NO SMOKING AT ALL BY INMATES NOR STAFF.
    MY REQUEST IS TO BE HOUSE AT MCC CHGO UNTIL MY CCC PLACEMENT AND NOT
TO BE FORCE TO STAY HERE AND INHALE STAFF SMOKING.

                              PLEASE ADVISE
                              Verrado malone
8-15-07

---

COP-OUT TO WARDEN

REFF: STAFF SMOKING

WARDEN ZUERCHER,

          Sir,on 8-8-07 you responsed to a cop out
address lto you in which a copy is attach.In your responce you stated
that areas near the front of the housing units are not designated smoking
areas,and the other areas around the compound that are designated smoking
have the "appropriate" signing and have been placed 25 feet from "any"entrance.

    SINCE YOU SENT YOUR RESPONSE BACK,I'VE READ P.S.1640.40,AND NOTICE THAT
THE PROGRAM STATEMENT HAVN'T BEEN UPDATED SINCE THE INSTITUTION BECAME
SMOKE FREE...
    EACH CIGARETTE RECEPTACLES THAT YOU SPOKE OF IN THE RESPONSE YOU SENT
ME ARE THE ONES THATS ARE OUT SIDE OF THE HOUSING UNITS WHERE STAFF IS
SMOKING AT IN WHICH IS NOT 25 feet from THE ENTRANCE AND EXIT OF THE
HOUSING UNIT.

    ON 8-8-07 WHILE WALKING TO REC. STAFF MEMEBER MRS.GARRETT WAS STANDING
NEXT TO THE CIGARETTE RECEPTACLES THAT OUT SIDE OF THE CHAPEL SMOKING
IN WHICH I ONCE AGAIN INHALE 2nd HAND SMOKE THAT LEAD ME TO USE MY INHALER
AND LEAD ME TO SICK CALL THAT NEXT DAY. THE RECEPTACLE THAT MRS.GARRETT
WAS SMOKING AT IS ONLY APPX 13 FEET FROM THE CHAPEL DOORS(ENTRANCE & EXIT)
AND THE RECEPTACLE IS MOUNTED ON THE COMPOUND THAT MYSELF AND OTHERS
MUST TREVAL EACH DAY.

EACH RECEPTACLE THAT ARE ON THE COMPOUND IS EITHER OUT SIDE OF EACH HOUSING
UNITS ENTRANCE AND EXIT DOORS OR THE CHAPEL DOORS WHICH EACH ONE IS
LESS THEN 25 Feets,NERVER LESS NO MATTER HOW SENSITIVE STAFF IS TOLD TO BE
THAT INMATES ARE NO LONGER TO SMOKE (WHICH I NEVER SMOKE DO TO HEALTH REASON)
    I SHOULD NOT HAVE TO INHALE STAFF SMOKING AT NO GIVING TIME.

I GOT TRANSFER FRO FCC YAZOO ON A MEDICAL TRANSFER TO PEKIN FOR MY ASTHMA
AND MY ASTHMA HAS WORSEN SINCE I HAVE BEEN HERE DO TO BEING EXPOSE TO
SMOKE BY YOUR STAFF.AT MY LAST #3 INSTITUTIONS(MCC CHGO,USP LEXVENWORTH,AND
FCC YAZOO CITY)THERE IS NO SMOKING AT ALL BY INMATES NOR STAFF.
    MY REQUEST IS TO BE HOUSE AT MCC CHGO UNTIL MY CCC PLACEMENT AND NOT
TO BE FORCE TO STAY HERE AND INHALE STAFF SMOKING.

                              PLEASE ADVISE
                              Verrado,malone
8-15-07

---

COP-OUT TO WARDEN

REFF: STAFF SMOKING

WARDEN ZUERCHER,

          Sir,on 8-8-07 you responsed to a cop out
address lto you in which a copy is attach.In your responce you stated
that areas near the front of the housing units are not designated smoking
areas,and the other areas around the compound that are designated smoking
have the "appropriate" signing and have been placed 25 feet from "any"entrance.

    SINCE YOU SENT YOUR RESPONSE BACK,I'VE READ P.S.1640.40,AND NOTICE THAT
THE PROGRAM STATEMENT HAVN'T BEEN UPDATED SINCE THE INSTITUTION BECAME
SMOKE FREE...
    EACH CIGARETTE RECEPTACLES THAT YOU SPOKE OF IN THE RESPONSE YOU SENT
ME ARE THE ONES THATS ARE OUT SIDE OF THE HOUSING UNITS WHERE STAFF IS
SMOKING AT IN WHICH IS NOT 25 feet from THE ENTRANCE AND EXIT OF THE
HOUSING UNIT.

    ON 8-8-07 WHILE WALKING TO REC. STAFF MEMEBER MRS.GARRETT WAS STANDING
NEXT TO THE CIGARETTE RECEPTACLES THAT OUT SIDE OF THE CHAPEL SMOKING
IN WHICH I ONCE AGAIN INHALE 2nd HAND SMOKE THAT LEAD ME TO USE MY INHALER
AND LEAD ME TO SICK CALL THAT NEXT DAY. THE RECEPTACLE THAT MRS.GARRETT
WAS SMOKING AT IS ONLY APPX 13 FEET FROM THE CHAPEL DOORS(ENTRANCE & EXIT)
AND THE RECEPTACLE IS MOUNTED ON THE COMPOUND THAT MYSELF AND OTHERS
MUST TREVAL EACH DAY.

EACH RECEPTACLE THAT ARE ON THE COMPOUND IS EITHER OUT SIDE OF EACH HOUSING
UNITS ENTRANCE AND EXIT DOORS OR THE CHAPEL DOORS WHICH EACH ONE IS
LESS THEN 25 Feets,NERVER LESS NO MATTER HOW SENSITIVE STAFF IS TOLD TO BE
THAT INMATES ARE NO LONGER TO SMOKE (WHICH I NEVER SMOKE DO TO HEALTH REASON)
    I SHOULD NOT HAVE TO INHALE STAFF SMOKING AT NO GIVING TIME.

I GOT TRANSFER FRO FCC YAZOO ON A MEDICAL TRANSFER TO PEKIN FOR MY ASTHMA
AND MY ASTHMA HAS WORSEN SINCE I HAVE BEEN HERE DO TO BEING EXPOSE TO
SMOKE BY YOUR STAFF.AT MY LAST #3 INSTITUTIONS(MCC CHGO,USP LEXVENWORTH,AND
FCC YAZOO CITY)THERE IS NO SMOKING AT ALL BY INMATES NOR STAFF.
    MY REQUEST IS TO BE HOUSE AT MCC CHGO UNTIL MY CCC PLACEMENT AND NOT
TO BE FORCE TO STAY HERE AND INHALE STAFF SMOKING.

                              PLEASE ADVISE
                              Verrado malone
8-15-07







July 27, 2007

Vernado Malone
Register No. 05898-027
Federal Correctional Institution
Pekin, IL 61555

RE: Complaint about secondhand smoke

Dear Mr. Malone:

This is in response to your correspondence received by the North Central Regional
Office on July 26, 2007, wherein you request to be transferred in order to avoid
exposure to secondhand smoke.

If you wish to have your issues formally reviewed, you may address them through the
Administrative Remedy Program. Pursuant to Program Statement 1330.13,
Administrative Remedy Program, the purpose of the Administrative Remedy Program is
to allow an inmate to seek formal review of an issue relating to any aspect of their
confinement. An inmate shall first present their issue of concern informally to institution
staff by filing an Informal Resolution (BP-8) form. Therefore, consistent with the rules
established at FCI Pekin, you may submit your issue(s) of concern locally, via the
Administrative Remedy Program.

Sincerely,

Richard W. Schott
Regional Counsel

RESULT      : ESAFAB
PAGES       : 0page

ADDRESS         : 0
DESTINATION     : 0
User/Account    :

COM. MODE       :
DURATION        : 1sec
TX START        : AUG  8 10:13
TIME STORED     : AUG  8 10:13
DOCUMENT#       : 7500000-115

PC-M            :

(WED) AUG  8 2007 10:13

the following document has not been transmitted. Try to retransmit the rest of pages.

p. 1

**U.S. Department of Justice**
Federal Bureau of Prisons

"CORRECTED COPY 3/22/2004"

# Program
# Statement

**OPI:** HSD/SAF
**NUMBER:** P1640.04
**DATE:** 3/15/2004
**SUBJECT:** Smoking/No Smoking Areas

**Rules Effective**: July 15, 2004

**1. [PURPOSE AND SCOPE §551.160. To advance towards becoming a clean air environment and to protect the health and safety of staff and inmates, the Bureau of Prisons will restrict areas and circumstances where smoking is permitted within its institutions and offices.]**

The Agency recognizes the right to negotiate issues pertaining to this policy consistent with the Master Agreement, statute, case law, and/or regulation

Medical and public health authorities have established the hazards of tobacco smoke. Of particular concern are the risks posed to nonsmokers by passive inhalation of environmental tobacco smoke (ETS). The Surgeon General has long concluded that scientific research indicated that second-hand tobacco smoke is a cause of lung disease in otherwise healthy nonsmokers.

On January 7, 1993, the Environmental Protection Agency (EPA) officially endorsed a report by an outside panel of scientific advisers to the agency, which stated that:

    "exposure to second-hand cigarette smoke causes lung cancer
    in adults and greatly increases the risk of respiratory
    illness in children."

The Bureau recognizes that when smokers quit smoking, they may face physical discomfort, weight gain, and stress related difficulties; however, these symptoms may be lessened with the appropriate interventions of a smoking cessation program. According to the Centers for Disease Control and Prevention, many people who quit smoking relapse.

**[Bracketed Bold - Rules]**
Regular Type - Implementing Information

Effective smoking cessation programs should also provide
counseling and monitoring to enhance success.

2.  **PROGRAM OBJECTIVES.**  The expected results of this program
are:

   a.   The designation of smoking areas may reduce exposure to
second hand smoke.

   b.   All Bureau facilities, with the exception of staff
residences, will be regarded as free of second hand smoke except
in perimeter patrol vehicles and towers when occupied by one
person.

   c.   Areas where smoking is permitted will be clearly
identified.

3.  **DIRECTIVES AFFECTED**

   a.  **Directive Rescinded**

      P1640.03   Smoking/No Smoking Areas (7/1/94)

   b.  **Directives Referenced**

      P4500.04   Trust Fund/Warehouse/Laundry Manual (12/15/95)
      P5270.07   Inmate Discipline and Special Housing Units
                 (12/29/87)
      P5290.14   Admission and Orientation Program (4/3/03)
      P6000.05   Health Services Manual (9/15/96)

      Executive Order 13058, 62 FR 43451, August 9, 1997

      Justice Property Management Regulations 128-20.105-3; 128-
      20.105-50; 128-20.105-51; 128-20.105-52

      Comptroller General Decision B-231453, Smoking Cessation
      Program for Federal Employees, February 3, 1989.

      Office of Personnel Management FPM Letter 792-20,
      Clarification of FPM Chapter 792, Federal Employees Health
      and Counseling Programs, May 17, 1989.

   c.   Rules cited in the Program Statement are contained in
28 CFR 551.160 et seq.

d.  Federal Service Impasses Panel Decision on Case Number 01 FSIP 184, Department of Justice Federal Bureau of Prisons Washington, DC and Council of Prison Locals 33, AFGE, AFL-CIO, dated November 8, 2001.

## 4.  **STANDARDS REFERENCED**

a.  American Correctional Association 3rd Edition Standards for Adult Correctional Institutions:  3-4202 **(Mandatory)**; 3-4214; 3-4215; 3-4216; 3-4357; and 3-4363

b.  American Correctional Association Standards for Adult Local Detention Facilities, 3rd Edition:  3-ALDF-3B-04 **(Mandatory)**; 3-ALDF-3C-01; 3-ALDF-3C-02; 3-ALDF-3C-03; 3-ALDF-4E-33; and 3-ALDF-4E-28

c.  American Correctional Association Standards for Adult Boot Camp Programs:  1-ABC-3B-05 **(Mandatory)**; 1-ABC-3C-01; 1-ABC-3C-02; 1-ABC-4E-41; and 1-ABC-4E-45

d.  Joint Commission On Accreditation of Healthcare Organizations, 1998 Comprehensive Accreditation Manual For Ambulatory Care:  EC.5

e.  Joint Commission on Accreditation of Healthcare Organizations, 1998 Comprehensive Accreditation Manual for Hospitals:  EC.5; EC5.1

## 5.  **[DEFINITIONS §551.161.  For the purpose of this subpart,]**

a.  **[Smoking is defined as carrying or inhaling a lighted cigar, cigarette, pipe, or other lighted tobacco products.]**

b.  An **area designated as free of second hand smoke** is defined as one in which there are no lighted tobacco products (e.g. cigars, cigarettes, pipes).

c.  **Designated area** is defined as a smoking area which the Warden has clearly identified.

## 6.  **STAFF SMOKING/NO SMOKING AREAS**

a.  This section (6.) applies equally to visitors, volunteers and contractors.

b.  The Warden must designate a smoking area for use in instances where smoking is to be part of an authorized religious activity.

- **Indoor Smoking.**  Indoor smoking shall be permitted only in perimeter towers and perimeter patrol vehicles when occupied by one person.

- **Outdoor Smoking.**  The Warden shall designate outdoor smoking areas which (a) are reasonably accessible to employees and (b) provide a measure of protection from the elements.  The designated outdoor smoking areas shall only be used by employees.

## 7.  **STAFF SMOKING CESSATION PROGRAMS**

**Components and Creation.**  Wardens are to establish an institution Smoking Cessation Program for staff.

For a period of 60 days, interested employees shall have the opportunity to sign up for a smoking cessation program, provided by the Employer at no cost to the employees, who shall be on administrative leave, workload permitting, to attend smoking cessation classes that are scheduled during their work time. This program will include nicotine replacement therapy (NRT), using skin patches or nicotine chewing gum.

To the extent not covered by health insurance, the Employer will provide a one-time payment to each employee who participates in the NRT, for an eight week supply of either patches or nicotine chewing gum.  In addition, the program will include informational literature about the benefits of quitting smoking and counseling, as needed.

General health information from persons requesting nicotine replacement therapy may be requested by the agency prior to disbursal of this payment.

**Smoking Cessation Program.**  A Smoking Cessation Program must, at a minimum, address:

- nutrition,
- physical activity (exercise),
- stress management, and
- nicotine replacement therapy (NRT).

Institutions may conduct these activities through a combination of:

- videos,
- classroom presentations,
- recreation activities, or
- group or individual counseling.

## 8. INMATE SMOKING

### [DESIGNATED SMOKING AREAS §551.162

**a.  The Warden must designate a smoking area for use in instances where smoking is part of an authorized inmate religious activity.**

**b.(1)  The Warden may designate only outdoor smoking areas for general inmate use (that is, for smoking which is not part of an authorized religious activity).  These smoking areas must be clearly identified.**

**(2)  The Warden, with the Regional Director's concurrence, may choose not to designate smoking areas for general use.  Once this occurs, the Regional Director's concurrence is required if the Warden later chooses to designate smoking areas for general use at the institution.]**

c.  Areas without smoking signs are non-smoking areas.

d.  Inmates violating the smoking rules will be subject to disciplinary action.

## 9.  INMATE SMOKING CESSATION PROGRAMS

a.  **Components and Creation.**  Wardens are to establish an institution Smoking Cessation Program consistent with local resources.

- (1)  The institution A&O Booklet will inform inmates of a Smoking Cessation Program's availability including the application and participation procedures.

- (2)  A Smoking Cessation Program must, at a minimum, address:

    - ◆ nutrition,
    - ◆ physical activity (exercise),
    - ◆ stress management, and
    - ◆ nicotine replacement therapy (NRT).

    Institutions may conduct these activities through a combination of:

    - ◆ videos,
    - ◆ classroom presentations,
    - ◆ recreation activities,

◆ the sale of nicotine replacement patches in the
institution commissary, or

◆ group or individual counseling.

b. **Nicotine Replacement Therapy (NRT).** Nicotine replacement
patches may assist with the gradual tapering of nicotine
consumption.

◆ Inmates requesting nicotine replacement patches must
have an initial medical assessment in order to purchase
a six to ten week supply of nicotine replacement
patches (see subsection (3)(b) below).

(1) Each institution Commissary will stock nicotine
replacement patches. Inmates may purchase nicotine
replacement patches with the appropriate staff approval
as noted in subsection (2) below.

(2) Inmates who wish to purchase nicotine replacement
patches must obtain an initial written approval from a
Bureau health care provider using the Nicotine
Replacement Therapy Approval form (Attachment A),
certifying that the inmate's health status has been
reviewed and the inmate is approved to use the nicotine
replacement patches.

(3) The health care provider will:

(a) Discuss the nicotine replacement patch's proper
use, describe possible side effects, and warn the
inmate about problems associated with overuse
(such as the use of two or more nicotine
replacement patches at the same time, or the use
of a nicotine replacement patch and continued use
of cigarettes).

(b) Record the inmate's health status in his or her
medical record (such as, but not limited to:
weight, blood pressure, post-prandial blood sugar,
pulmonary function, exercise tolerance, and how
many cigarettes are smoked per day, and any other
clinically pertinent information).

(c) Provide a signed Attachment A recommending a
specific NRT dosage program to the inmate.

# Bureau of Prisons Fundamentals

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## Mission Statement

The Federal Bureau of Prisons protects society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient, and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

## Cultural Anchors/Core Values

*Bureau Family:* The Bureau of Prisons recognizes that staff are the most valuable resource in accomplishing its mission, and is committed to the personal welfare and professional development of each employee. A concept of "family" is encouraged through healthy, supportive relationships among staff and organization responsiveness to staff needs. The active participation of staff at all levels is essential to the development and accomplishment of organizational objectives.

*Sound Correctional Management:* The Bureau of Prisons maintains effective security and control of its institutions utilizing the least restrictive means necessary, thus providing the essential foundation for sound correctional management programs.

*Correctional Workers First:* All Bureau of Prisons staff share a common role as correctional worker, which requires a mutual responsibility for maintaining safe and secure institutions and for modeling society's mainstream values and norms.

*Promotes Integrity:* The Bureau of Prisons firmly adheres to a set of values that promotes honesty and integrity in the professional efforts of its staff to ensure public confidence in the Bureau's prudent use of its allocated resources.

*Recognizes the Dignity of All:* Recognizing the inherent dignity of all human beings and their potential for change, the Bureau of Prisons treats inmates fairly and responsively and affords them opportunities for self-improvement to facilitate their successful re-entry into the community. The Bureau fur-

ther recognizes that offenders are incarcerated *as* punishment, not *for* punishment.

*Career Service Orientation:* The Bureau of Prisons is a career-oriented service, which has enjoyed a consistent management philosophy and a continuity of leadership, enabling it to evolve as a stable, professional leader in the field of corrections.

*Community Relations:* The Bureau of Prisons recognizes and facilitates the integral role of the community in effectuating the Bureau's mission, and works cooperatively with other law enforcement agencies, the courts, and other components of government.

*High Standards:* The Bureau of Prisons requires high standards of safety, security, sanitation, and discipline, which promote a physically and emotionally sound environment for both staff and inmates.

## Vision Statement

*The Federal Bureau of Prisons, judged by any standard, is widely and consistently regarded as a model of outstanding public administration, and as the best value provider of efficient, safe, and humane correctional services and programs in America. This vision will be realized when...*

The Bureau provides for public safety by assuring that no escapes and no disturbances occur in its facilities. The Bureau ensures the physical safety of all inmates through a controlled environment which meets each inmate's need for security through the elimination of violence, predatory behavior, gang activity, drug use, and inmate weapons. Through the provision of health care, mental, spiritual, educational, vocational, and work programs, inmates are well-prepared for a productive and crime-free return to society. The Bureau is a model of cost-efficient correctional operations and programs.

Our talented, professional, well-trained, and diverse staff reflect the Bureau's culture and treat each other fairly. Staff work in an environment free from discrimination. A positive